Rich, Judge,
concurring.
I concur in the conclusion reached but not necessarily with all of the reasons of the majority opinion.
First, to dispose of a somewhat irrelevant matter, I have always been and still am of the opinion that the grant of a patent creates a monopoly and that much confused thinking has resulted from arguing that it does not. It is, however, a beneficial monopoly to be distinguished from odious monopolies and only to that extent am I willing to agree with the discussion by the majority of United States v. Dubilier Condenser Corp., 289 U. S. 178. I have commented on this matter before in 24 J. P. O. S. at page 96, where my views are more fully set forth.
While I agree with the majority opinion in its ultimate conclusion that the single microfilm shown to be on file in the Library of Congress is not a “printed publication,” under section 102 (b), and with the supporting conclusion that it is not “printed,” I think the basis for the latter conclusion requires clarification because I feel that under different circumstances we may in future wish to be free to hold that a “printed publication” can be made by microfilm techniques. I think it should be clear that we are not holding that microfilms can under no circumstances be deemed to be “printed.”
I think that the board, in the Ex farte Brendlein case, 105 USPQ 453, on which it relied, had a good idea which it misapplied, however, in both that case and this one. It said that it regarded a microfilm copy as in the same category with the stencil sheet which might be used to produce mimeograph copies “or with the type that might be set up to print an unlimited number of copies of a writing.” It *905 then moved from this idea to another, that the O. T. S. announcement of availability of copies to be made from the microfilm constituted in law a publication of the material on the microfilm.
I will assume for the sake of argument (and I think it is the law) that when a book has been printed and copies are available for delivery, an advertisement offering it for sale would bring about its “publication,” even before any copies are actually sold. It would be a quite different proposition to say that an advertisement of a forthcoming book which had not yet been printed was a publication of the book. In construing the term “printed publication” it would seem to be axiomatic that the printing has to be done before the publishing, otherwise the publication will not be of something “printed.”
If, as the board said, the microfilm is comparable to a mimeograph stencil or to set type (I do not believe the board really meant to refer to unset type), as seems to me to be technically reasonable, it fails, by reason of that very fact, to support the board’s view because it does not constitute printed material ready to be published but merely a means for producing printed material, as yet unused. It cannot, therefore, become a “printed publication” by virtue of a published offer to carry out the reproduction process on request and make a copy of the microfilm or produce enlargement prints therefrom. I thus agree fully with the majority’s conclusion that the microfilm at bar is not “printed” but for the reason that it is merely a means for making prints which has not been shown to have been put to use. We do not happen to know whether the Library of Congress microfilm is an original made by photographing the documents which are recorded on it or a photographic copy (or “print”) made from such an original. It makes no difference to me in this case because as of the date relied on, the date of publication of the O. T. S. bibliography, no other copy of it has been shown to exist and I can see no reason for assuming the existence of any other copies, as would normally be done in the case of an ordinary book or periodical. To me the situation is no different than it would be if only the original documents, now photographed onto the microfilm, were in the library and the O. T. S. had published a bibliography offering to furnish applicants with photostatic copies thereof. We would then have precisely the same degree of accessibility but we would not have the probability of wide circulation which is, I agree, the real significance of the word “printed” in the term “printed publication.” Were it otherwise, logic would require the inclusion within the term of all unprinted public documents for they are all “accessible.” While some tribunals have gone quite far in that direction, as in the “college thesis cases,” I feel they have done so unjustifiably and on the wrong theory. Knowledge is not in the possession of the public where there has been *906 no dissemination, as distinguished from technical accessibility, and surely the former is the concept underlying the expression “printed publication.” Printing, in the original and common meaning of the term which implies the use of the printing press, is not even now the only common means for producing multiple copies for publication and microfilm techniques are already in use to replace printed books in some fields. We must not be narrow in our view of the meaning of “printed” and in novel situations should consider the facts to see whether the interested public has in fact had possession of the disclosure in the form of a general publication. Nothing of the kind is shown by the facts of the present case. No rigid rule about microfilm should be deduced, however, from our decision. And on the other hand it should not be assumed that the word “printed” is so sacred that any paper which has come off of a printing press and has been “published” in the sense of having been made known to some fraction of the public will qualify as a printed publication under section 102 (b). In our legal system effect is to be given to substance and intent without making a fetish either of the dictionary or of ritualistic formulae. Keifer & Keifer v. R. F. C., 306 U. S. 381, 391, fn. 4; Johnson v. United States, 163 Fed. 30, 32; Cabell v. Markham, 148 F. 2d 737, 739.